UNITED STATES of America,
Plaintiff–Appellee,

v.

Joshua Carl REDMAN, Defendant–Appellant.

No. 93–30437.

United States Court of Appeals,
Ninth Circuit.

Submitted * Aug. 2, 1994.

Decided Sept. 12, 1994.

* The panel unanimously finds this case suitable for decision without oral argument.    Fed.R.App.    Proc. 34(a) and 9th Cir. Rule 34–4.

Michael R. Iaria, Nance, Iaria & Gombiner, Seattle, WA, for defendant-appellant.

Lawrence Lincoln, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellee.

Before WRIGHT, KOZINSKI, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Joshua Carl Redman appeals his sentence under the Sentencing Guidelines imposed following his guilty plea on charges of conspiracy to aid and assist an escape, in violation of 18 U.S.C §§ 752(a), 371. We affirm.

## BACKGROUND

In late December 1992, Redman agreed to assist a federal prisoner awaiting trial in his escape from a jail in Washington. On January 6, 1993, he broke into the jail and unsuccessfully attempted to cut through reinforcement bars leading to his friend's cell block. A month later, in an unrelated incident, Redman burglarized a pawn shop in Utah. He was tried and convicted in Utah state court for second degree theft. Utah Code Ann. § 76–6–412(1)(a). The state court imposed a one-to-fifteen year indeterminate sentence upon Redman. He was subsequently brought to Seattle and charged in federal court with conspiracy to aid and assist an escape. Redman pled guilty to the federal charge. The district court sentenced Redman to 18 months imprisonment, to run consecutively to his Utah sentence. Redman now appeals his federal sentence. He argues that the court erred in its application of United States Sentencing Commission, *Guidelines Manual*, § 5G1.3, which governs imposition of a sentence on a defendant subject to an undischarged term of imprisonment.[1]

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3741 and 28 U.S.C. § 1291.

The factual findings underlying the district court's application of the Sentencing Guidelines are reviewed for clear error. *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992). The district court's interpretation and application of the sentencing guidelines are reviewed de novo. *United States v. Ogbuehi*, 18 F.3d 807, 814 (9th Cir.1994). The Sentencing Guidelines did not, however, alter the appellate courts' traditional deference to a district court's exercise of its sentencing discretion. *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992); *see also* 18 U.S.C. § 3742(e) ("The court of appeals ... shall give due deference to the district court's application of the guidelines....").

## DISCUSSION

When the district court sentenced Redman, he was already serving a one-to-fifteen year indeterminate sentence on his Utah theft conviction. The Guidelines required the district court to apply § 5G1.3 (imposition of a sentence on a defendant subject to an undischarged term of imprisonment) to determine the extent to which Redman's federal sentence should be consecutive to his state-imposed sentence. That section "is intended to result in an appropriate incremental punishment for the instant offense that most nearly approximates the sentence that would have been imposed had all the sentences been imposed at the same time." U.S.S.G. § 5G1.3, comment. (backg'd.). The parties agree that this case did not fall under either section 5G1.3(a) (mandatory consecutive sentences) or section 5G1.3(b) (mandatory concurrent sentences). Rather, it was governed by section 5G1.3(c), p.s. That section requires courts to impose a second sen-

---

1. All references are to the Guidelines as drafted November 1, 1992, unless otherwise noted.

tence to run consecutively to the prior undischarged term of imprisonment "to the extent necessary to achieve a reasonable incremental punishment for the instant offense."

The commentary to section 5G1.3(c), p.s. provides a methodology for determining what a reasonable incremental penalty should be. That commentary states:

> To the extent practicable, the court *should consider* a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time.

U.S.S.G. § 5G1.3, comment. (n. 3) (emphasis added).

■ To the extent that they interpret substantive guidelines and do not conflict with them or with any statutory directives, the policy statements contained in the Guidelines bind federal courts. *Williams,* —— U.S. at ——, 112 S.Ct. at 1119 ("[w]here ... a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable guideline"); *United States v. Forrester,* 19 F.3d 482, 484 (9th Cir.1994). Similarly, where the commentary to a guideline section functions to interpret that section or to explain how it is to be applied, the commentary is binding on federal courts unless it is plainly erroneous or inconsistent with the guideline. *Stinson v. United States,* —— U.S. ——, ——–——, 113 S.Ct. 1913, 1917–20, 123 L.Ed.2d 598 (1993).

■ In this case, the district court performed all of the calculations suggested by the guidelines. When it did so, it determined that the sentence range for the federal offense was 24 to 30 months. Neither party objects to the court's calculation of the sentencing range for the federal offense. Next, the district court calculated the hypothetical combined Guidelines sentence range that would have resulted if Redman's federal and state offenses had been sentenced together. When it did that, it discerned that the hypothetical combined sentencing range was 24 to 30 months. Based on evidence submitted by Utah state officials, the court then determined that Redman would probably serve three years of his Utah sentence. Then the court found that, if it were to impose a concurrent sentence within the hypothetical combined sentencing range, Redman would receive *no* incremental punishment for his federal offense. He was already sentenced to about 36 months in Utah state prison. A federal sentence that approximated the one that would have been imposed if the offenses had been sentenced together would be 30 months or less. If that sentence were to run concurrently, Redman would, in all likelihood, receive no additional jail time. In other words, far from receiving a reasonable incremental punishment for his wholly unrelated federal crime, he would receive no increment whatever, all things remaining equal. There was no reason to think that all things would not remain equal.

Unsatisfied with that result, the court approached sentencing a different way. In order to impose a reasonable incremental punishment for the federal offense, the court departed downward from Redman's criminal history category by discounting the three criminal history points that resulted from his Utah conviction and arrived at a sentencing range of 18 to 24 months for the federal offense.[2] The court sentenced Redman at the bottom of the range, but ordered the sentence to run consecutively to the state offense. The result, based on the court's findings, is that Redman will serve approximately 36 months in state prison, followed by 18 months in federal prison. Of course, it is conceivable that Redman will serve somewhat more or somewhat less than 36 months in state prison. In any event, his incremental punishment for the federal escape attempt will be 18 months.

Although it did explain why it was not adhering to the commentary's method of determining whether a consecutive sentence was necessary, the court did not specifically

2. The government has not appealed from that departure.

say that it was departing from that method. Thus, it did not follow the procedure we outlined in *United States v. Lira–Barraza,* 941 F.2d 745, 746–47 (9th Cir.1991) (en banc). Therefore, if this were a true departure decision the court would have erred. In other words, if the commentary's methodology for determining a "reasonable incremental penalty" were as mandatory as most guideline provisions, the court could not have done what it did. But as we will explain, the commentary is not that mandatory, no formal departure decision was required, and no error was committed.

The commentary methodology:

is meant to assist the court in determining the appropriate sentence.... Generally, the court may achieve an appropriate sentence through its determination of an appropriate point within the applicable guideline range for the instant federal offense, combined with its determination of whether that sentence will run concurrently or consecutively to the undischarged term of imprisonment.

U.S.S.G. § 5G1.3, comment. (n. 3). A review of the history of § 5G1.3 supports the inference that its current language is intended to give sentencing courts leeway in deciding what method to use to determine what a reasonable incremental penalty is in a given case.

The original § 5G1.3 required courts to impose a consecutive sentence upon defendants serving an unexpired term of imprisonment for an unrelated offense at the time of sentencing. U.S.S.G.App. C, am. 289. That section was replaced in 1989. The commentary to the 1989 version stated that: "[t]he court *may consider* imposing a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under § 5G1.2 ... had all of the offenses been federal offenses for which sentences were being imposed at the same time." U.S.S.G.App. C, am. 385 (emphasis added).

The section was again deleted and replaced in 1991. The commentary to the 1991 version provided:

To the extent practicable, the court *shall impose* a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under § 5G1.2 ... had all of the offenses been federal offenses for which sentences were being imposed at the same time.

U.S.S.G.App. C, am. 465 (quoting U.S.S.G. § 5G1.3, comment. (n. 4) (Nov.1991)) (emphasis added). In sum, by November of 1991 the Commission, which once thought that a consecutive sentence was always the presumably proper sentence, had concocted a new methodology. It had then become so enamored of that methodology that it decided to require courts to follow it. Within a year, it bethought itself still again.

A November 1992 amendment designated § 5G1.3(c) a policy statement and changed the language relating to the district court's determination of what constitutes a reasonable incremental penalty to its current version: "To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates" the hypothetical combined sentence under § 5G1.2. U.S.S.G.App. C, am. 465.

The meaning of the current "should consider" language in § 5G1.3 can be discerned by reference to the earlier iterations of the Guideline. Under the 1989 amendment, courts had complete discretion to employ the commentary methodology or not when deciding on a reasonable incremental penalty. The 1991 amendment stripped courts of all discretion in the matter. *See United States v. Warren,* 980 F.2d 1300, 1303 (9th Cir.1992) (discussing differences between 1989 and 1991 versions of § 5G1.3), *cert. denied,* —— U.S. ——, 114 S.Ct. 397, 126 L.Ed.2d 344 (1993). A court that desired to use an alternative method of setting a reasonable incremental penalty had to depart from § 5G1.3(c), whose commentary used mandatory language in directing courts to use its methodology. *United States v. Fagan,* 996 F.2d 1009, 1017 n. 9 (9th Cir.1993); *United States v. Pedrioli,* 931 F.2d 31, 32–33 (9th Cir.1991). The "should consider" language in the current version falls somewhere be-

tween the "may consider" language in the 1989 amendment and the "shall impose" mandate of the 1991 version.[3] *See United States v. Gross*, 979 F.2d 1048, 1052–53 & n. 9 (5th Cir.1992) (1992 version of § 5G1.3 and its commentary is less favorable to defendants because, while it is similar to the 1991 version, the 1992 amendments afford sentencing courts more discretion); *accord Fagan*, 996 F.2d at 1017 n. 8.

The amendment of language in the guideline must properly be understood as evidence of an intent to abandon the standard established by the old language in favor of something different. We think it takes no hierophant to discern that. Although the district court no longer has complete discretion to employ any method it chooses when it decides upon a reasonable incremental penalty, neither is it required to use the commentary methodology or else depart from the Guideline. Consideration of the commentary methodology is expected. So, too, is the court to take it to be most probable that the methodology will yield a reasonable incremental penalty. *See United States v. Coleman*, 15 F.3d 610, 612–13 (6th Cir.1994) (vacating a consecutive sentence imposed upon a defendant serving an undischarged term of imprisonment because the district court failed to address section 5G1.3(c) and the sentencing methodology suggested in its commentary); *cf. Forrester*, 19 F.3d at 484–85 (in revoking probation, court is not bound by U.S.S.G. Chapter 7 policy guidelines, but it must consider them pursuant to language in the statute governing imposition of a sentence that requires courts to "consider ... any pertinent policy statement"). But when addressing this area of traditional judicial discretion the Commission has shown more humility than usual. The court may decline to impose the sentence suggested by the commentary's methodology, if it has a good reason for doing so. Indeed, as we have already pointed out the Commission has said that the methodology "is meant to assist the court." U.S.S.G. § 5G1.3, comment (n. 3). That is a far cry from a demand that courts

knuckle under and follow the Commission's approach. *See also* United States Sentencing Commission, *Most Frequently Asked Questions About the Sentencing Guidelines* § 121, at 37 (7th ed. June 1994) ("As a policy statement, § 5G1.3 achieves the congressional and Commission goal of reasonable incremental punishment without binding the court to a practice [, i.e. reliance on the same rules used for multiple counts,] that may be of limited value in some cases.").

True, the court must attempt to calculate the reasonable incremental punishment that would be imposed under the commentary methodology. If that calculation is not possible or if the court finds that there is a reason not to impose the suggested penalty, it may use another method to determine what sentence it will impose. The court must, however, state its reasons for abandoning the commentary methodology in such a way as to allow us to see that it has considered the methodology. *See* 18 U.S.C. §§ 3584(b), 3553(a); *United States v. Conkins*, 9 F.3d 1377, 1385–86 (9th Cir.1993); *Pedrioli*, 931 F.2d at 32. If the court demonstrates that it has considered the commentary's methodology and states a valid reason for employing a different one, we will not review its discretionary decision to impose a consecutive sentence for the purpose of achieving a "reasonable incremental penalty." *See Forrester*, 19 F.3d at 484–85.

Applying these principles to the case at hand, it becomes clear that the district court did everything it was required to do. The district court did make the necessary calculations, and determined that the methodology did not yield a reasonable incremental penalty because it effectively provided *no* additional punishment for the federal offense. As the court reasonably decided, there was a need to impose just punishment on Redman in light of the seriousness of his federal offense. That is one of the factors that courts are statutorily required to consider when imposing a consecutive sentence. *See* 18 U.S.C. § 3553(a)(2)(A). The district court

---

**3.** Webster defines the word "may" as "have permission to." *Webster's Third Int'l Dictionary* 1396 (1986) (*Webster's*). "Shall" is defined as being "used in laws, regulations and directives to express what is mandatory." *Id.* at 2085. "Should" is used to express what is "probable or expected." *Id.* at 2104.

was not required to impose the sentence suggested by the commentary's methodology. It did need to consider the methodology and it did need to give its reasons for using an alternative method. When it did those things it did enough.

As we have already intimated, the district court's decision to impose a consecutive sentence was not a departure from the guidelines; it was a recognition and use of them. We are aware of Eighth Circuit authority to the contrary. That court has plainly said that if a methodology other than that set forth in the policy statement is used, the district court must apply a departure analysis. *See United States v. Duranseau*, 26 F.3d 804, 810–11 (8th Cir.1994); *United States v. Brewer*, 23 F.3d 1317, 1321–22 (8th Cir.1994). In so doing, that court has followed a case which was decided under the 1991 mandatory version of the guideline. *See United States v. Gullickson*, 981 F.2d 344, 346–48 (8th Cir.1992). In other words, it has essentially ignored the change wrought when the 1992 version was adopted.

However, as we have said, we think the Commission had something in mind when it made that change. That something was the conferring of a greater degree of freedom upon district judges than the earlier 1991 version accorded them. We think that was a wise decision on the Commission's part and we will not ignore it. We must, however, say that although our difference with the Eighth Circuit is more than semantic, it may well be that it will only make a substantial difference at the margin. We have no doubt that the reasons for not following the guideline methodology would often sustain a decision to depart as well.

## CONCLUSION

The district court recognized that the imposition of a sentence which added no increment for Redman's federal offense could not be called the addition of a reasonable increment. Indeed, to say that a reasonable increment was zero would defy common sense and common usage. It would amount to the reification of an oxymoron. The question we must answer is whether the sentencing law follows common sense in this regard. It does!

The district court did not err when it determined that Redman should have an 18 month term in federal custody for his perpetration of his federal crime which runs consecutive to the sentence for the totally unrelated theft charges that caused him to be housed in state prison.

AFFIRMED.